UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAJUAN BURKS,

Plaintiff,

v.

UNKNOWN ANDERSON et al.,

Defendants.

Case No. 1:25-cv-1913

Honorable Paul L. Maloney

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. In a separate order, the Court granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim. Additionally, the Court will grant Plaintiff's first-filed Motion to Amend Complaint (ECF No. 4) and will consider Plaintiff's proposed amended complaint (ECF No. 4-1) to be filed in this action. The Court will deny Plaintiff's Motion to File "Supplemental Complaint" (ECF No. 7) and Motion for Leave to File an Amended Complaint. (ECF No. 8.)

## <u>Discussion</u>

### I. Plaintiff's First Motion to Amend Complaint

On February 12, 2026, Plaintiff filed a Motion to Amend Complaint, and he attached a proposed amended complaint to the Motion. (ECF No. 4.) Federal Rule of Civil Procedure 15(a)(1) provides that a party may amend its pleading once as a matter of course no later than 21 days after serving it, or, "if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a). Additionally, "[i]n all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.*

Here, in deference to Plaintiff's *pro se* status and in the interest of justice, the Court will grant Plaintiff's Motion to Amend Complaint (ECF No. 4). The Court will consolidate Plaintiff's original complaint (ECF No. 1) and proposed amended complaint (ECF No. 4-1) and construe those two pleadings together as the operative complaint.

### II. Motion to Supplement Complaint

On July 27, 2026, Plaintiff filed a Motion to File "Supplemental Complaint." (ECF No. 7.) Plaintiff's proposed supplemental complaint reiterates his claims against Defendants Anderson and Darnell described in the original complaint and amended complaint. (Proposed Suppl. Compl., ECF No. 7, PageID.35.) Plaintiff's proposed supplemental complaint also seeks to add Warden Richard Brokaw, Assistant Deputy Warden Sabrina Jones, and Correctional Officers Unknown Harrison, Unknown Clark, Unknown Kunannan, and Unknown Balahoski as Defendants. (*Id.*, PageID.33.) Plaintiff then presents allegations of an incident involving those additional Defendants that took place on July 4, 2026, approximately 15 months after the incident involving Defendants Anderson and Darnell, the two Defendants named in Plaintiff's original complaint. (*Id.*) Plaintiff

claims that these additional Defendants allowed Plaintiff to be assaulted by a fellow prisoner. (*Id*.) Plaintiff does not allege that Defendants Anderson or Darnell were involved in the July 4, 2026, incident, and the allegations regarding that incident do not indicate any connection to the previous incident involving Defendants Anderson and Darnell.

Federal Rule of Civil Procedure 15(d) governs supplemental pleadings, and states in relevant part that, "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). For a motion to supplement pleadings under Rule 15(d), the Court applies the same standard of review and rationale used in analyzing a motion to amend under Rule 15(a). *Spies v. Voinovich*, 48 F. App'x 520, 527 (6th Cir. 2002). In *Foman v. Davis*, 371 U.S. 178 (1962), the Supreme Court identified some circumstances in which "justice" might counsel against granting leave to amend: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Id*. at 182. If a claim would be properly dismissed, amendment to add the claim would be futile. *Thiokol Corp. v. Mich. Dep't of Treasury*, 987 F.2d 376, 383 (6th Cir. 1993).

Because Plaintiff's proposed supplemental complaint seeks to add parties and claims, it must comply with Federal Rules of Civil Procedure 18 and 20. Federal Rule of Civil Procedure 20(a) limits the joinder of parties in a single lawsuit, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims. Rule 20(a)(2) governs when multiple defendants may be joined in one action: "[p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the

same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Rule 18(a) states: "A party asserting a claim ... may join, as independent or alternative claims, as many claims as it has against an opposing party."

Courts have recognized that, where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18....
>
> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

7 Charles Allen Wright, Arthur R. Miller, Mary Kay Kane, Federal Practice & Procedure Civil § 1655 (3d ed. 2001), *quoted in Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009), and *Garcia v. Munoz*, No. 08-1648, 2008 WL 2064476, at *3 (D.N.J. May 14, 2008); *see also United States v. Mississippi*, 380 U.S. 128, 142–43 (1965) (joinder of defendants is permitted by Rule 20 if both commonality and same transaction requirements are satisfied).

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778 (internal quotation omitted). When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "the time period during which the alleged acts occurred; whether the acts ... are related; whether more than one act ... is alleged; whether the same supervisors were involved, and whether the defendants

were at different geographical locations." *Id*. (quoting *Nali v. Mich. Dep't of Corr*., No. 07-10831, 2007 WL 4465247, at *3 (E.D. Mich. Dec. 18, 2007)).

Aside from reiterating his claims against Defendants Anderson and Darnell, Plaintiff's proposed supplemental complaint presents allegations that are unrelated to those in his original and first amended complaints. Specifically, the new allegations describe an incident that took place 15 months after the incident described in Plaintiff's complaint and involve an entirely different group of Defendants. Therefore, Plaintiff's new claims would be properly dismissed as misjoined. Consequently, it is not a proper supplementation under Rule 15(d) because the claims raised by these new allegations would be improperly joined to the operative consolidated complaint in this action. Therefore, despite the deference provided to Plaintiff given his *pro se* status, the Court will deny Plaintiff's motion for leave to supplement his complaint. (ECF No. 7.)

**III. Second Motion to Amend Complaint**

On August 14, 2026, Plaintiff filed a Motion for Leave to File an Amended Complaint, seeking to file a second amended complaint. (ECF No. 8.) In Plaintiff's proposed second amended complaint, Plaintiff reiterates his allegations against Defendants Anderson and Darnell, and restates the allegations regarding the July 4, 2026, incident described in Plaintiff's proposed supplemental complaint. (Proposed Second Am. Compl., ECF No. 8-1, PageID.44–45.) Like the proposed supplemental complaint, Plaintiff's proposed second amended complaint seeks to add as Defendants Warden Richard Brokaw, Assistant Deputy Warden Sabrina Jones, and Correctional Officers Unknown Harrison, Unknown Clark, Unknown Kunannan, and Unknown Balahoski. (*Id*., PageID.42.) The new claims presented in Plaintiff's proposed second amended complaint would be properly dismissed as misjoined for the same reasons as the new claims contained in Plaintiff's supplemental complaint.

Accordingly, the Court will deny Plaintiff's motion for leave to file a second amended complaint (ECF No. 8.)

## IV. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Earnest C. Brooks Correctional Facility, (LRF) in Muskegon Heights, Muskegon County, Michigan. The events about which he complains occurred at the Bellamy Creek Correctional Facility (IBC) in Ionia, Ionia County, Michigan. Plaintiff sues the following IBC staff: Correctional Officer Unknown Anderson and Sergeant Unknown Darnell. (Am. Compl., ECF No. 4-1, PageID.26.) Plaintiff sues both Defendants in their official and individual capacity. (*Id.*)

In Plaintiff's complaint, he alleges that on April 10, 2025, Defendant Anderson requested a "shake down"[1] in housing unit 4, B-wing base. (*Id.*, PageID.27.) Plaintiff "complied with the order given" at that time. (*Id.*) Defendant Anderson then reached into Plaintiff's shorts pocket, which Plaintiff claims "was not allowed." (*Id.*) Defendant Anderson handcuffed Plaintiff, which Plaintiff claims cut Plaintiff's wrist and cut off the circulation to Plaintiff's wrist. (*Id.*) Defendant Anderson requested that "yard staff" take Plaintiff to segregation. (*Id.*)

Defendant Anderson then "fabricated" a misconduct report, stating that he had given Plaintiff a direct order to not lower his arm during the shakedown. (Compl., ECF No. 1, PageID.3.) Plaintiff also claims that Defendant Anderson falsely stated in the report that Plaintiff said "you ain't shaking me down, I've been doing this for 16 years." (*Id.*)

After being taken to segregation, Plaintiff was then left in the shower for 2 hours while still handcuffed. (Am. Compl., ECF No. 4-1, PageID.27.) While Plaintiff was in the shower, he told

[1] In this opinion, the Court corrects the capitalization and punctuation in quotations from Plaintiff's complaint.

Defendant Darnell that Defendant Anderson had fabricated a misconduct ticket. (*Id.*) Defendant Darnell did not take Plaintiff's statement "into account," and subsequently approved the misconduct ticket and Plaintiff's placement in segregation. (*Id.*, PageID.27, 28.)

Plaintiff believes that Defendant Anderson filed the false misconduct because of a "past history at IBC back in 2021." (*Id.*, PageID.27.) Plaintiff specified that in 2021, he filed complaints against two nonparty staff members, who were terminated "due to past complaints." (*Id.*, PageID.28.) Plaintiff asserts that Defendants Anderson and Darnell were close to the two terminated staff members. (*Id.*)

Plaintiff had a hearing on April 30, 2025, regarding the misconduct charge, where the judge found him not guilty of the misconduct. (*Id.*, PageID.27.) Plaintiff alleges that this ruling was based on video footage which showed that Defendant Anderson had never given Plaintiff a direct order to not lower his arm. (*Id.*)

On May 27, 2025, Plaintiff filed a grievance, which was later denied. (*Id.*; Compl., ECF No. 1, PageID.3.) Plaintiff also made verbal complaints regarding what he believed to be a violation of his Fourteenth Amendment right to substantive due process. (Am. Compl., ECF No. 4-1, PageID.27.)

Based on the foregoing allegations, Plaintiff brings First Amendment retaliation claims, Eighth Amendment claims, and Fourteenth Amendment Procedural Due Process Clause claims. Plaintiff seeks monetary damages.

## V. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels

and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

**A. Official Capacity Claims**

Plaintiff sues Defendants Anderson and Darnell in both their official and individual capacities. (Am. Compl., ECF No. 4-1, PageID.26.)

A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity; in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune from suit in the federal courts under the Eleventh Amendment, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the United States Court of Appeals for the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See, e.g., Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010). Moreover, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will*, 491 U.S. at 66); *Harrison*, 722 F.3d at 771.

Here, Plaintiff seeks monetary damages only. (Am. Compl., ECF No. 4-1, PageID.29.) As noted above, the MDOC is not a "person" who may be sued under § 1983 for money damages. *See, e.g.*, *Lapides*, 535 U.S. at 617. Similarly, Plaintiff may not seek monetary damages against Defendants Anderson and Darnell in their official capacity. *See Will*, 491 U.S. at 71 ("We hold that neither a State nor its officials acting in their official capacities are "persons" under § 1983.").

Accordingly, for these reasons, Plaintiff's claims against Defendants Anderson and Darnell in their official capacities will be dismissed for failure to state a claim.

**B. First Amendment Retaliation Claims**

Plaintiff claims that the allegedly fabricated misconduct ticket Defendant Anderson issued, and which Defendant Darnell approved without any investigation, was retaliatory for complaints Plaintiff made in 2021 against nonparty MDOC staff members Devin Williams and Blake Butler. (Am. Compl., ECF No. 4-1, PageID.27, 28.) Plaintiff alleges that nonparties Williams and Butler were fired "due to past complaints," and that Defendants Anderson and Darnell were "close to" nonparties Williams and Butler. (*Id*., PageID.28.)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) the plaintiff was engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108; *see Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (discussing that in complaints screened pursuant to 28 U.S.C. § 1915A,

"[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)).

Here, Plaintiff provides little information regarding his 2021 complaints against nonparties Williams and Butler. The filing of a nonfrivolous complaint is protected conduct that can form the basis of a First Amendment retaliation claim. *See Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018) (recognizing that nonfrivolous complaints, whether written or verbal, are protected conduct). Additionally, the issuance of a misconduct ticket can be considered adverse action. *See Thomas v. Eby*, 481 F.3d 434, 441 (6th Cir. 2007) (discussing that the issuance of a misconduct ticket can "constitute[] an adverse action"). Assuming without deciding that Plaintiff has established that he engaged in protected conduct and that an adverse action was taken against Plaintiff, Plaintiff must still show that the adverse action was motivated, at least in part, by the protected conduct. *See Thaddeus-X*, 175 F.3d at 394.

Plaintiff alleges that the conduct of Defendants Anderson and Darnell was intended to punish Plaintiff for the complaints that Plaintiff filed against nonparties Williams and Butler four years earlier. (Am. Compl., ECF No. 4-1, PageID.28.) However, as explained below, Plaintiff's allegations are insufficient to show such retaliatory motive. First, Plaintiff alleges that he filed past complaints against nonparties Williams and Butler and that those two "were terminated due to past complaints." (*Id.*) But Plaintiff does not allege that it was *his* past complaints that caused nonparties Williams and Butler to be fired. Additionally, to the extent that Plaintiff's complaints were influential in the termination of the employment of nonparties Williams and Butler, Plaintiff does not allege that Defendants Darnell or Anderson were aware of that. Moreover, Plaintiff does not allege that Defendants Anderson and Darnell, or anyone else, said or did anything to suggest a connection between the 2025 misconduct ticket and Plaintiff's 2021 complaints. With no

allegations connecting the 2025 misconduct ticket to complaints Plaintiff made against two nonparty individuals four years earlier, Plaintiff has failed to show that Defendants Anderson or Darnell acted with a retaliatory motive. Under these circumstances, Plaintiff's "conclusory allegations of retaliatory motive 'unsupported by material facts [are] not . . . sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)).

Accordingly, Plaintiff has failed to state a First Amendment retaliation claim against Defendants Anderson and Darnell and the Court will dismiss those claims.

**C. Eighth Amendment Claims**

The Court construes Plaintiff's allegations regarding the shakedown on April 10, 2025, and his escort to segregation to raise Eighth Amendment claims.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or

safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

### 1. Claims Regarding the Shakedown

Plaintiff alleges that during the shakedown on April 10, 2025, Defendant Anderson reached into the pocket of Plaintiff's shorts, "which was not allowed." (Am. Compl., ECF No. 4-1, PageID.27.)

Plaintiff does not identify the authority under which Defendant Anderson's action was "not allowed." To the extent that Plaintiff alleges that this act violated an MDOC policy, any such violation is insufficient to state a claim under § 1983. Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Therefore, to the extent that Plaintiff alleges that Defendant Anderson violated the MDOC's policies, Plaintiff fails to state a claim under § 1983.

To the extent that Plaintiff alleges that Defendant Anderson allegedly reaching into Plaintiff's shorts pocket amounted to sexual harassment in violation of the Eighth Amendment, that claim also fails. The Sixth Circuit has held that "isolated, brief, and not severe" instances of sexual harassment, without more, do not give rise to Eighth Amendment violations. *Jackson v. Madery*, 158 F. App'x 656, 662 (6th Cir. 2005) (finding that harassing comments, even coupled with one minor instance of sexualized touching during a search, fall short of an Eighth Amendment

violation), *abrogated in other part by Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018); *see Rafferty v. Trumbull Cnty.*, 915 F.3d 1087 (6th Cir. 2019). In this case, Plaintiff's allegation that Defendant Anderson put his hand in Plaintiff's shorts pocket during a shake down does not rise above an "isolate, brief, and not severe" incident. *See Jackson*, 158 F. App'x at 662. There is nothing in Plaintiff's complaint to suggest that Defendant Anderson putting his hand in Plaintiff's pocket was done for any sexual purpose or that Defendant Anderson made any sexual comments to Plaintiff before, during, or after that occurred. Under these circumstances, Defendant Anderson putting his hand in Plaintiff's shorts pocket during a shakedown falls short of an Eighth Amendment claim.

Accordingly, the Court will dismiss any intended Eighth Amendment claims regarding Defendant Anderson putting his hand in Plaintiff's pocket during the shakedown.

#### 2. Claims Regarding Initial Placement in Handcuffs and Later Placement in Segregation Showers

Plaintiff alleges that after the shakedown with Defendant Anderson on April 10, 2025, Defendant Anderson handcuffed him. (Am. Compl., ECF No. 4-1, PageID.27.) Then, Defendant Anderson requested that "yard staff" take Plaintiff to segregation. (*Id.*). According to Plaintiff, the handcuffs cut his wrist and cut off circulation to his wrist. (*Id.*) Plaintiff also alleges that he was left in the segregation showers for 2 hours with the handcuffs still on his wrists. (*Id.*) At some point while Plaintiff was in the shower, Plaintiff alleges that he told Defendant Darnell that Defendant Anderson had fabricated a misconduct ticket. (*Id.*)

As relevant to Plaintiff's claim regarding the initial use of handcuffs, Plaintiff claims that Defendant Anderson handcuffed Plaintiff and that the handcuffs cut off circulation to Plaintiff's wrist and cut his wrist. (*Id.*) Plaintiff does not allege that he alerted anyone, let alone Defendant Anderson, to the issues with the handcuffs. (*See id.*) To the extent that Plaintiff intended to bring an excessive force claim regarding his initial placement in handcuffs, Plaintiff must allege

sufficient facts to satisfy the subjective and objective components of an Eighth Amendment excessive force claim. "The subjective component focuses on the state of mind of the prison officials." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011). Courts ask "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). Second, "[t]he objective component requires the pain inflicted to be 'sufficiently serious.'" *Williams*, 631 F.3d at 383 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). The objective component requires a "contextual" investigation that is "responsive to 'contemporary standards of decency.'" *Hudson*, 503 U.S. at 8 (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). Although the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . [w]hether or not significant injury is evident." *Hudson*, 503 U.S. at 9.

Here, Plaintiff alleges that Defendant Anderson placed Plaintiff in handcuffs in preparation for Plaintiff being escorted to segregation by "yard staff." (Am. Compl., ECF No. 4-1, PageID.27.) Plaintiff alleges that the handcuffs cut off his circulation and that he had a cut on his wrist; Plaintiff does not allege any other facts about the nature of the cut. (*See id.*) To state a claim regarding excessive use of force premised on handcuffing, Plaintiff must allege facts to show: "(1) that he received a physical injury from the handcuffing; and (2) that the officers ignored [his] complaints that the handcuffs were too tight." *Cf. Gresham v. Awomolo*, No. 1:24-cv-242, 2025 WL 2689292, at *3 (W.D. Mich. Aug. 18, 2025), *R&R adopted*, No. 1:24-cv-242, 2025 WL 2687390 (W.D. Mich. Sept. 19, 2025) (discussing this standard in the context of a motion for summary judgment

and citing, *inter alia*, *Lyons v. City of Xenia*, 417 F.3d 565, 575–76 (6th Cir. 2005)). The Court assumes, without deciding, that the cut to Plaintiff's wrist satisfies the requirement that Plaintiff show that he sustained a physical injury; however, Plaintiff does not allege that he informed any individuals, let alone any named Defendants, regarding the tightness of the handcuffs. (*See* Am. Compl., ECF No. 4-1, PageID.27.) Because Plaintiff does not allege that he informed any individuals regarding the tightness of the handcuffs, Plaintiff necessarily fails to show that any "officers ignored [his] complaints that the handcuffs were too tight." *Gresham*, 2025 WL 2689292, at *3 (citations omitted). Under these circumstances, Plaintiff fails to state any Eighth Amendment claims regarding his initial placement in handcuffs.

Further, as to Plaintiff's allegation that he was later left in the segregation showers for two hours with the handcuffs still on his wrists, as explained below, Plaintiff fails to allege any facts to show that Defendants Anderson and Darnell had any involvement in, let alone knowledge of, both Plaintiff's initial placement and his continued placement in the segregation showers. Specifically, Plaintiff does not allege that Defendants Anderson and Darnell were involved in his transport to segregation; instead, Plaintiff alleges that Defendant Anderson asked "yard staff" to take Plaintiff to segregation. (*See* Am. Compl., ECF No. 4-1, PageID.27.) There is nothing in Plaintiff's complaint to suggest that Defendants Anderson and Darnell were aware that the "yard officers" placed Plaintiff in the segregation showers. (*Id.*) Further, although Plaintiff alleges that he spoke with Defendant Darnell while in the segregation showers, Plaintiff alleges that this conversation addressed only the misconduct ticket Defendant Anderson issued. Plaintiff does not allege that he informed Defendant Darnell of the length of time Plaintiff spent handcuffed in the shower. (*Id.*)

Accordingly, for all of these reasons, Plaintiff has failed to state any Eighth Amendment claims against Defendants Anderson and Darnell.

**D. Fourteenth Amendment Procedural Due Process Clause Claims**

The Court construes Plaintiff's allegation that Defendant Anderson issued him a "false misconduct" ticket and that Defendant Darnell approved the misconduct ticket as raising a Fourteenth Amendment Procedural Due Process Clause claim.

To state a Fourteenth Amendment procedural due process claim, Plaintiff must show that the sanctions he received as a result of the misconduct conviction "inevitably affect[ed] the duration of [Plaintiff's] sentence" or imposed an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 486–87 (1995). In *Sandin*, the Court held that regardless of the mandatory language of the prison regulations, the inmate did not have a liberty interest because his placement in administrative segregation for thirty days did not constitute an atypical and significant hardship within the context of his prison life. *Id.* at 484; *see Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997). Without a protected liberty interest, a plaintiff cannot successfully claim that his due process rights were violated because "[p]rocess is not an end in itself." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983).

Here, Plaintiff does not identify the length of time that he spent in segregation. Plaintiff alleges that the misconduct ticket was issued on April 10, 2025, and was dismissed on April 30, 2025. (Compl., ECF No. 1, PageID.3.) Plaintiff's complaint therefore suggests that, at most, Plaintiff spent 20 days in segregation. Plaintiff fails to allege any facts to suggest that this period in segregation constituted an "atypical and significant hardship." *See, e.g.*, *Sandin*, 515 U.S. at 484; *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010) (finding that 61 days in segregation is not atypical and significant). The fact that Plaintiff was ultimately found not guilty of the charge does not alter this analysis.

Furthermore, because Plaintiff's misconduct charge was dismissed, Plaintiff did not receive any subsequent sanctions for a misconduct conviction. Under these circumstances, Plaintiff necessarily fails to show that he received any sanctions from a misconduct conviction that impacted the duration of his sentence or constituted an "atypical and significant hardship." *Sandin*, 515 U.S. at 486–87. Moreover, even if Plaintiff had alleged the loss of a protected liberty interest, he would not state a due process claim because he fails to show that he did not receive all the process due to him. *See generally Wolff v. McDonnell*, 418 U.S. 539 (1974) (setting forth the minimum process required for prison disciplinary proceedings that implicate a liberty interest). In all cases where a person stands to be deprived of his life, liberty or property, he is entitled to due process of law. This due process of law gives the person the opportunity to convince an unbiased decision maker that, for example, he has been wrongly or falsely accused or that the evidence against him is false. That is, the right to due process protects Plaintiff's ability to *respond* to spurious charges. It does not include the right to *prevent* or *prevail* on such charges. *See Zinermon v. Burch*, 494 U.S. 113, 125 (1990) ("[T]he deprivation by state action of a constitutionally protected interest in 'life, liberty or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." (emphasis in original) (citations omitted)).

Accordingly, Plaintiff fails to state a Fourteenth Amendment Procedural Due Process Clause claim and the Court will dismiss those claims.

## **Conclusion**

The Court will grant Plaintiff's Motion to Amend Complaint (ECF No. 4) and will consider Plaintiff's proposed amended complaint (ECF No. 4-1) to be filed in this action. The Court will deny Plaintiff's Motion to File "Supplemental Complaint" (ECF No. 7) and Motion for Leave to File an Amended Complaint (ECF No. 8.)

Further, having conducted the review required by the PLRA, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons the Court concludes that Plaintiff's claims are properly dismissed, the Court also concludes that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court certifies that an appeal would not be taken in good faith.

A judgment consistent with this opinion will be entered.

Dated: September 4, 2026

/s/ Paul L. Maloney
Paul L. Maloney
United States District Judge